326 F.Supp.2d 987 (2004)
Michelle PICKENS, a Minor, by her Mother and Next Friend Dianne Pickens, Plaintiff(s),
v.
MUNZERT'S STEAK HOUSE, LLC, and John R. Munzert, Defendants.
No. 4:02 CV 01925 RWS.
United States District Court, E.D. Missouri, Eastern Division.
April 14, 2004.
*988 Gregory A. Rich, Weinhaus and Dobson, Jerome J. Dobson, Weinhaus and Dobson, Jonathan C. Berns, Weinhaus and Dobson, St. Louis, MO, for Michelle Pickens, Plaintiff.
Michael B. Kass, Armstrong Teasdale, LLP, Robert A. Kaiser, Armstrong Teasdale, LLP, Stephen D. Hoyne, Amelung and Wulff, St. Louis, MO, for Munzert's Steak House, LLC, John R. Munzert, Defendants.

MEMORANDUM AND ORDER
SIPPEL, District Judge.
Michelle Pickens ("Pickens") filed this Complaint against Munzert's Steak House, LLC ("Steak House") and its owner John R. Munzert ("Munzert") alleging a hostile work environment, sexual harassment, and constructive discharge pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Missouri Human Rights Act ("MHRA"), Mo.Rev.Stat. § 213.010 et seq. Pickens also seeks recovery against Munzert for common law battery.
Munzert and the Steak House (collectively the "Defendants") have moved for summary judgment claiming the alleged incidents of harassment are not sufficiently severe or pervasive to alter a term, condition, or privilege of Pickens employment. Because genuine issues of material fact exist whether Pickens was subjected to a hostile work environment, summary judgment will be denied.

I. Facts
The facts recited below are viewed in the light most favorable to the plaintiff.
On July 11, 2001, Pickens, a high school student, was hired by Munsert's Steak House. When she was hired, Pickens was presented with and she signed a copy of the Steak House sexual harassment policy. On October 1, 2001, Pickens quit her job at the Steak House.
Munzert owned and managed the Steak House. Munzert also employed two supervisors, Peggy Austin ("Austin") and John Wallis ("Wallis").
Pickens claims of sexual harassment begin shortly after she started working at the Steak House. At first, there were general jokes and talk among the employees that Pickens claims made her feel uncomfortable. Pickens claims that her manager and supervisor, Munzert and Wallis, made repeated comments about the bodies of the girls employed at the Steak House.
On at least five separate occasions, when Pickens entered the walk-in cooler to get supplies, Munzert or Wallis followed her inside and blocked her exit. Munzert occasionally turned the lights off as he followed her inside the walk-in cooler and would then encourage Pickens to stand closer to him because he was scared of the *989 dark. On a few occasions when the lights remained on Munzert pinned Pickens to the wall. On each of these occasions Pickens says she felt trapped, but pushed past Munzert and left the cooler. On one occasion Munzert pinned Pickens against a wall, touched his nose to her nose and licked her lips.
On one occasion, as Pickens filled the salt and pepper shakers, Munzert told her that he was going to screw her to see if she was good and tight. On other occasions, Munzert made deliberate contact with Pickens by touching her belly button or other parts of her body while she was working. Pickens claims that these events made her feel uncomfortable and nervous. At the end of at least one shift, Pickens was the only female employee scheduled to work late with Wallis and Munzert. She was so nervous about being alone with Wallis and Munzert that she asked a female co-worker to stay and work late with her so that she would not be alone with Wallis and Munzert.
In addition to its traditional staff, Munzert and the Steak House participated in a work-study program with the local high school. Although a student at the high school, Pickens was not a participant in the work-study program. Prior to October 2001, the assistant principal of the high school, James Knirr ("Knirr"), began an investigation of the Steak House after receiving reports of sexual harassment from work-study students. Knirr has testified that eight of the nine students he interviewed during his investigation of the Steak House reported some sort of harassment. After his investigation, Knirr terminated the high school's relationship with the Steak House.
Pickens was interviewed by Mr. Knirr on October 1, 2001 as part of his investigation. After her interview with Mr. Knirr on October 1, 2001, Pickens quit her job at the Steak House. On December 20, 2001, Pickens filed her complaint with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights. In her administrative complaints, Pickens claimed constructive discharge, hostile work environment, and sexual discrimination. Both agencies issued a right to sue letter.

II. Summary Judgment Standard
In considering whether to grant summary judgment, a district court examines all of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." Fed.R.Civ.P. 56(c). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center-West, 160 F.3d 484, 486 (8th Cir.1998) (citing Fed.R.Civ.P. 56(c)). A genuine issue of material fact exists "when a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "At the summary judgment stage, the court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." Quick v. Donaldson, 90 F.3d 1372, 1376-77 (8th Cir.1996). "Because employment discrimination cases frequently turn on inferences rather than direct evidence, the court must be particularly *990 deferential to the party opposing summary judgment." Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir.1999). Under these standards, I review the facts in this case.

III. Analysis

A. All Evidence Related to Pickens' Claims of Sexual Harassment, Hostile Work Environment, and Constructive Discharge Will Be Considered.
Picken's complaint contained factual allegations that were not included in her administrative claims before the EEOC. In particular, she alleged that Munzert brushed against her in the server hallway, and that Munzert and Wallis, in a sexually suggestive manner, told her that they wished they were 17 again. The Defendants seek to have these allegations excluded from the record because Pickens did not exhaust her administrative remedies.
To bring a civil suit in a Title VII action a civil suit is not necessarily limited to the specific allegations included in an administrative complaint with the EEOC. Nichols v. American Nat'l Ins. Co., 154 F.3d 875, 886 (8th Cir.1998) (citations omitted). Munzert and the Steak House claim that Pickens' evidence is limited to only the factual allegations included in her EEOC Complaint. The Defendants rely upon Stuart v. Gen. Motors Corp., 217 F.3d 621 (8th Cir.2000) to limit the specific factual allegations considered for this motion.
Stuart was an electrician at General Motors Corp. who made a number of allegations against her former employer following her termination. The United States Court of Appeals of the Eighth Circuit affirmed the dismissal of her claim of retaliation by discipline because "[t]here was no mention in [Staurt's] charge of discrimination of GMC retaliating against her through disciplinary actions taken against her." Id. In deciding Stuart the Eight Circuit stated that administrative complaints are to be construed liberally, and plaintiff "may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." Stuart, 217 F.3d at 631.
Defendants misconstrue the Court's holding in Stuart. Stuart's failure to exhaust her administrative remedies for a retaliation claim prevented her from pursuing a retaliation claim in the district court. The focus is on the claims presented, not on the factual details of the claim.
There is no dispute here that Pickens filed a claim for hostile work environment with the EEOC and MHRC. Pickens has exhausted her administrative remedies on her claim of a hostile work environment and may pursue that claim in this court.
In determining whether a hostile environment existed, "it is necessary to look at all the circumstances" of the employment. Nichols, 154 F.3d at 887 Any evidence regarding abusiveness in the Picken's work environment is relevant to these circumstances and the "whole context of the interrelationship between the key players in the work relationship needs to be considered." Id.
Based on the evidence before the EEOC, Pickens received a right to sue letter on claims of constructive discharge, hostile work environment, and sexual discrimination at the Steak House. All of the relevant facts surrounding Pickens' hostile work environment claim will be considered.

B. Pickens Has Presented a Prima Facia Case of Sexual Discrimination.
Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et *991 seq., and the Missouri Human Rights Act ("MHRA"), Mo.Rev.Stat. § 213.010 et seq. prohibit sexual discrimination in the workplace. A Plaintiff may establish a prima facia case of sexual discrimination through a sexually hostile work environment by showing that the Plaintiff:
1) is a member of a protected class;
2) was subjected to unwelcome sexual harassment;
3) the harassment was based on sex;
4) the harassment affected a term, condition, or privilege of employment; and
5) the employer knew or should have known of the harassment and failed to take proper remedial action.
Stuart v. General Motors Corp., 217 F.3d 621, 631 (8th Cir.2000) (citations omitted).
A "sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). A court must "examine the circumstances including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (internal citations omitted).
Viewing the facts in the light most favorable to Pickens, she has presented a factual basis for a sexually hostile work environment.
First, Pickens belongs to a protected class as a female employee. Second, there is evidence that Pickens was subjected to unwelcome events of sexual harassment.
Third, the harassment was based on based on the fact that Pickens is female. Pickens testified that Munzert and Wallis made comments about her body. Munzert cornered Pickens, brushed up against her body, touched her body, licked her lips and told her he was going to screw her.
Based on the record, I cannot say as a matter of law that the events described by Ms. Pickens did not unreasonably affected the term, condition, or privilege of Pickens' employment.
Because Pickens has established a prima facie case of a hostile work environment, and because there are material issues of fact which are disputed, summary judgment will be denied.

C. The Defendants Have Not Established an Affirmative Defense
The Defendants make a vague argument that the work environment at the Steak House cannot be considered hostile because Pickens did not complain to her supervisor as required under the Sexual Harassment Policy. Because the alleged harassment in this case was perpetrated by Pickens supervisors, the Steak House may be held vicariously liable for an actionable hostile environment. See Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).
An employer is vicariously liable unless the employer can affirmatively show:
(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and
(b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.
Burlington Industries, Inc. v. Ellerth, 524 U.S. at 765, 118 S.Ct. 2257.
The Defendants argue that Pickens could have reported the incidents of sexual harassment to her female supervisor, Peggy *992 Austin. At a minimum, the evidence on the record creates a material issue of fact whether the Steak House exercised reasonable care to prevent and promptly correct any sexually harassing behavior. The people responsible for preventing and correcting sexually harassing behavior were the manager and supervisors. In this case, two of the three supervisors are also the alleged participants in the behavior which gives rise to the claim.
Whether Perkins' failure to report the sexually harassing behavior to a supervisor is unreasonable is a question of fact for the jury which precludes summary judgment.

D. Defendants' Motion to Dismiss the Battery Count is Moot.
Because I have denied the Defendant's Motion for Summary Judgment, the question of whether to dismiss Pickens Battery claim for lack of jurisdiction under 28 U.S.C. § 1367(c)(3) is moot.

IV. Conclusion
Because genuine issues of material fact exist regarding Pickens' allegation that Munzert and Wallis sexually harassed her and created a hostile work environment at the Steak House. I cannot say that the Munzert's Steak House was not a hostile work environment for Michelle Pickens or that she was not constructively discharged from her employment.
Accordingly,
IT IS HEREBY ORDERED that Defendants Munzert's Steak House and John R. Munzert's Motion for Summary Judgment is DENIED.